UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAHAROLD WOODHOUSE,

    Plaintiff,

v.                                                                                                    Case No. 8:24-cv-995-CPT

FRANK BISIGNANO,
COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB). (Doc. 21). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in September 1969, obtained at least a high school education, and has past relevant work experience as a sergeant major and a claims processor. (R. 27, 266, 271). In January 2023, the Plaintiff applied for DIB, alleging disability as of November 2021 due to migraines, allergies, folliculitis, acid reflux, flat

---

[1] Mr. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Bisignano is substituted for the former Acting Commissioner, Mr. Leland Dudek, as the Defendant in this suit.

feet, knee problems, Brugada syndrome, a sleep disorder, lower back pain, neck and shoulder pain, post-traumatic stress disorder, and left and right ankle problems. *Id.* at 10, 219–27, 270. The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. *Id*. at 143–47, 149–52.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in December 2023. *Id.* at 41–69, 153–54. The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. *Id.* at 41–69. A vocational expert (VE) also testified. *Id.*

In a decision issued in January 2024, the ALJ determined that the Plaintiff (1) had not engaged in substantial gainful activity since his alleged onset date in November 2021; (2) had the severe impairments of migraine headaches, anxiety disorder, degenerative disc disease, mild osteoarthritis in bilateral shoulders, trauma or stressor-related disorder, thoracic aortic aneurism without rupture, and Brugada syndrome with automatic implantable cardioverter-defibrillator; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to engage in light work subject to various limitations;[3] and (5) based on the VE's testimony, could

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems considerable enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. § 404.1520(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] Specifically, the ALJ found that the Plaintiff could occasionally stoop and crawl; could frequently balance, kneel, reach, handle, and climb ramps and stairs; could maintain attention, concentration, and pace for two-hour increments in an eight-hour workday; could not climb ladders, ropes, or

perform jobs that exist in significant numbers in the national economy. *Id.* at 10–29. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. *Id.* at 1–6. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F. 4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.

---

scaffolds; must avoid exposure to atmospheric conditions; could have occasional interaction with co-workers, supervisors, and the general public; and could occasionally and gradually be introduced to changes in the workplace. (R. 17).

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

§ 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

    A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress*

---

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In resolving whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F. 4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F. 4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's sole claim on appeal is that the ALJ erred by not imposing appropriate limitations in her RFC determination to accommodate the Plaintiff's migraine headaches. (Doc. 21). After careful review, the Court finds that the Plaintiff's challenge lacks merit.

As referenced above, an ALJ must assess at step two whether a claimant has a medically determinable impairment or combination of impairments that is severe. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). The severity of an impairment in this context is "measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of [a]

deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An impairment is therefore deemed to be severe only if it significantly limits a claimant's physical or mental capacity to engage in basic work activities. *See* 20 C.F.R. § 404.1522(a); *Bridges v. Bowen*, 815 F.2d 622, 625–26 (11th Cir. 1987) (per curiam). A non-severe impairment, on the other hand, is one that does not result in such a restriction. *See* 20 C.F.R. § 404.1522(a). In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

As also noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must discern based on all the pertinent evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments—severe and non-severe—and related symptoms. *Id.* § 404.1545(a)(2) ("[The SSA] will consider all of [a claimant's] medically determinable impairments of which [it is] aware, including [a claimant's] medically determinable impairments that are not 'severe,' . . . when [the SSA] assess[es a claimant's RFC]."); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (same) (citation omitted).

An ALJ, however, is not required to expressly discuss every piece of evidence in her decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Instead, the ALJ need only ground her RFC determination on the claimant's condition "taken as a whole," *Jamison*, 814 F.2d at 588 (citations omitted), after evaluating all the material information presented to her, *see* 20 C.F.R. §§ 404.1520(e), 404.1545(a). As long as the Court can ascertain from the ALJ's decision that she took into account all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. *Id.* § 404.1545.

In this case, as discussed earlier and as pertinent here, the ALJ found at step two that the Plaintiff had the severe impairment of migraine headaches and at step four that the Plaintiff was able to engage in light work subject to a number of restrictions, including avoiding any exposure to atmospheric conditions. (R. 13, 17). In arriving at this finding, the ALJ acknowledged the Plaintiff's attestations at the hearing and in his written statements that he "experience[d] migraine headaches" lasting several hours "at [least] three to four times per week," that these headaches required him to lay down and negatively impacted his sleep, that they also precluded him from "perform[ing] work duties," and that they were the reason he "los[t] his job in 2021." *Id.* at 17–18, 52–53, 284–85, 287, 295–302. The ALJ explained, however, that although the Plaintiff's medically determinable impairments could reasonably be expected to cause his headaches and other symptoms, his assertions about "the intensity, persistence[,] and limiting effects" of his headaches and other afflictions were

7

"not entirely consistent with the medical evidence and other evidence in the record," including documentation from the Department of Veterans Administration (VA) where the Plaintiff received care.[6] *Id.* at 18–27.

With respect to the medical evidence, the ALJ observed:

[T]here are few complaints and minimal treatment for [the Plaintiff's] migraines or any other type of headaches [in the healthcare records]. He does have a service-connected rated diagnosis [by the VA] of migraine headaches, for which he has at times been prescribed Fioricet (butalbital-acetaminophen-caffeine) most recently in July 2022 pursuant to a request for refills of this medication and melatonin, which it appears he did fill but the record does not suggest regular refills beyond July 2022. Additionally, the most recent records directly referencing the [Plaintiff's] migraine headaches are from December 2020, at which time he reported having headaches about once a week and took Fioricet only if Tylenol was ineffective. *He reported Fioricet completely eradicated his headaches within [fifteen] minutes and he only took about three to four of these pills per month. Otherwise, his treatment records do not reflect any specific complaints relating to ongoing migraine or other types of headaches, even when he requested his Fioricet refill in July 2022.* He has not been referred to neurology or pain management for migraine headaches or other types of headaches. Frankly, it is difficult to even find the [Plaintiff's] migraine headaches to be a severe medically determinable impairment based on the medical evidence of record.

*Id.* at 24, 624–792 (emphasis added).

In addition to this medical evidence, the ALJ highlighted that even though the Plaintiff characterized his migraine headaches as a "significantly limiting condition,"

---

[6] The Plaintiff does not contest this credibility determination by the ALJ and has thus waived any such challenge. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam).

the reports the Plaintiff and his wife provided revealed that he was "able to walk the dog, attend to his personal care, prepare simple meals, complete light household chores, leave the home regularly and independently, drive a vehicle and ride a bicycle, manage money, play golf, socialize with others outside the home, and attend church." *Id.* at 18, 284–302; *see also* 20 C.F.R. § 404.1529(c)(3)(1) (denominating daily activities as a factor in evaluating a claimant's symptoms); SSR 16-3p, 2017 WL 5180304 (same); *Dyer*, 395 F.3d at 1212 (upholding an ALJ's assessment of a claimant's subjective complaints that was predicated in part on the claimant's activities of daily living). The ALJ also pointed out that there was evidence in the record showing that the Plaintiff ran a "travel business," "spen[t] a lot of time volunteering for a local non-profit organization," and "most recently travel[ed] to Greece." (R. 21, 24, 624–911, 925–996).

Along with the above evidence, the ALJ cited the prior administrative medical findings of two agency physicians, Drs. Carlos Cordero and Steven Arkin. *See id.* at 25, 116–24, 127–35; *see also* 20 C.F.R. §§ 404.1513(a)(5), 404.1520c; SSR 17-2p, 2017 WL 3928306 (noting that state agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act"). As the ALJ observed, these providers independently reviewed the Plaintiff's file and opined that, despite the Plaintiff's allegations of debilitating migraines, he possessed a greater capacity for physical work than the ALJ ultimately determined. (R. 25, 116–24, 127–35). The ALJ deemed these findings to be partially persuasive because they generally cohered with the healthcare records before her. *Id.*

9

The ALJ then supplemented the exertional limitations crafted by Drs. Cordero and Arkin with a number of further restrictions, including the Plaintiff's need to avoid atmospheric irritants, to account for his migraine headaches. *Id*.

Notwithstanding the ALJ's extensive analysis of the evidence pertaining to the Plaintiff's migraines, the Plaintiff now argues in summary fashion that the limitations the ALJ included in her RFC to address this malady are inadequate because they have "no logical" connection to the condition. (Doc. 21 at 7). The Plaintiff, however, does not provide any case law to buttress this perfunctory assertion, nor does he direct the Court to any evidence which bolsters his contention that the challenged limitations do not bear any relationship to his migraine headaches. As a result, he has waived any such argument. *See Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.[7]

Although not entirely clear, the Plaintiff seemingly asserts in the alternative that the ALJ erred in failing to consider the opinions of the "medical consultants" at the VA which led to the Plaintiff having a significant VA disability rating.[8] (Doc. 21 at 5–6). This contention is likewise unavailing.

---

[7] The same can be said of the Plaintiff's cursory claim that the ALJ's "[RFC] findings should have set forth the frequency and duration the [Plaintiff] would have [the] prostrating attacks." (Doc. 21 at 7).
[8] A VA disability rating is predicated on the severity of a claimant's service-connected condition and is used by the VA to determine how much disability compensation a claimant will receive each month. *See About Disability Ratings*, U.S. Department of Veterans Affairs, https://www.va.gov/disability/about-disability-ratings/#:~:text=What's%20a%20disability%20rating%3F,health%20and%20ability%20to%20function (last visited Aug. 19, 2025).

In her decision, the ALJ acknowledged that the VA deemed the Plaintiff to be totally and permanently disabled due to various service-connected afflictions and that the VA found him to have a combined disability rating of one hundred percent. (R. 26, 624–792, 925–948). The ALJ correctly pointed out, however, that under the controlling regulations, such agency determinations are "inherently neither valuable nor persuasive." *Id.* at 26–27; *see also Tomasello v. Comm'r of Soc. Sec.*, 2022 WL 1045753, at *3 (M.D. Fla. Apr. 7, 2022) ("[T]he regulations specify that VA disability ratings constitute evidence that is 'inherently neither valuable nor persuasive.'") (citing 20 C.F.R. § 404.1504b(c)(1)); *Velez v. Comm'r of Soc. Sec.*, 2024 WL 5375602, at *5 (S.D. Fla. Dec. 31, 2024) (noting it would have been improper for the ALJ to rely on the VA's disability rating in forming his own conclusions about the claimant's ability to work under the standards promulgated by the SSA), *report and recommendation adopted*, 2025 WL 370117 (S.D. Fla. Feb. 3, 2025). Notwithstanding this observation, the ALJ conducted a lengthy and thorough review of the evidence stemming from the VA's care of the Plaintiff, including the objective medical findings relating to his impairments and the assessments of the providers who treated him. *See* (R. 19–27, 624–792, 925–948). Notably, the Plaintiff does not identify any evidence in the VA records that the ALJ did not take into account in arriving at her RFC determination and how that evidence fatally undermines the RFC.

In sum, it is evident from the ALJ's decision that she based the RFC on the Plaintiff's condition "taken as a whole," *Jamison*, 814 F.2d at 588 (citations omitted), after considering all the pertinent information before her, 20 C.F.R. §§ 404.1520(e),

404.1545(a), and that this determination is adequately substantiated. To the extent the Plaintiff now invites the Court to reweigh the record evidence (Doc. 21 at 4–5), the Court is prohibited from doing so, *see Carter*, 726 F. App'x at 739 (cautioning that a court "may not decide the facts anew . . . or re-weigh the evidence") (citing *Moore*, 405 F.3d at 1211); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (commenting that when the Commissioner's decision is buttressed by substantial evidence, a court must affirm it even if the court would have reached another result and even if it finds that "the evidence preponderates against" the Commissioner's decision). And to the extent the Plaintiff also suggests that there may be other information in the record that bolsters his challenge (Doc. 21 at 4–5), the existence of such other evidence is irrelevant given the circumstances presented. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports h[is] position; [ ]he must show the absence of substantial evidence supporting the ALJ's conclusion.") (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

### IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 28th day of August 2025.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record